In re Estate of Dickason, 199 Ill. App. 640.

uncertain and indefinite as not to allow the court to tell therefrom how the defendant arrived at the amount of its claim, it is properly stricken.

---

## In re Estate of Livingston T. Dickason, Deceased, Appellee.
## Wicks Stone Company, Appellant.

### Gen. No. 21,236.   (Not to be reported in full.)

Appeal from the Circuit Court of Cook county; the Hon. JOHN McNUTT, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1915. Affirmed. Opinion filed June 19, 1916. Rehearing denied June 30, 1916.

### Statement of the Case.

Claim by Wicks Stone Company, filed in the Probate Court of Cook county, against the estate of Livingston T. Dickason, deceased, for $4,062.50. The claim was disallowed and an appeal taken to the Circuit Court of Cook county. The matter came on for hearing before a judge and jury. The court instructed the jury to return a verdict against claimant, which was accordingly done, and judgment was entered on the verdict against the claimant for costs, to reverse which this appeal is prosecuted.

The evidence tended to establish the following facts: That claimant was regularly incorporated about Sep-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

tember, 1906, under the laws of Indiana with an authorized capital of $100,000; that its object was to quarry, buy and sell stone, etc.; that the articles of incorporation were properly acknowledged by Livingston T. Dickason, deceased, and that said Dickason on the 25th of August, 1906, subscribed for $10,000 worth of stock in the corporation.

The record showed that the corporation began to transact business, bought real estate, seven houses, $10,000 worth of machinery, and also built one house. There were nineteen subscribers to the capital stock including Dickason. The stock subscription list was dated August 26, 1906, and provided that the subscribers pay fifty per cent. of the amounts set opposite their names, and that "we further agree to pay twenty per cent. of the amount subscribed at the time of subscription and the remainder by January 1, 1907, as same may be needed and called for by W. W. Wicks." Afterwards, calls were made on the subscribers to pay a portion of their subscription, and in accordance with said calls Dickason made the following payments: January 18, 1907, ten per cent., $500; February 14, 1907, ten per cent., $500; April 18, 1907, ten per cent., $500; August 15, 1907, five per cent., $250; making a total of $1,750. Payments were also made by other subscribers, some paying in full by services rendered the corporation, and others by turning over property to the corporation. Notes were given in payment or part payment by others. It was conceded that the corporation ceased doing business at a date not shown. March 17, 1909, a meeting of the stockholders was held at its office, at which nine stockholders were present. Dickason did not attend the meeting, although notified. At that meeting a resolution was adopted, in part, as follows: "It was, on motion, ordered that all stock in the company be issued April 1, 1909, to all stockholders desiring to make final payment; that stockholders not

desiring to make cash payments give note to company dated April 1, 1909, for amount unpaid. Note to be due one day after date and bear interest at four per cent. from date and to be non-negotiable. Further, that if assessment of over ten per cent. on stock be made, thirty days' notice shall be given. Stock to be issued upon payment of notes. Certificate to be held by the company until note is finally paid."

The secretary of the company testified that after the adoption of the above resolution, he talked with Dickason over the telephone, but it did not appear that the adoption of the resolution was mentioned in any manner; neither did it appear that any demand was ever made on Dickason after the passage of this resolution; nor that any demand was made on him after the payment of $250 on August 15, 1907. He died March 22, 1913.

HUTTMANN, CLOYES, NETHERTON & CARR, for appellant.

ASHCRAFT & ASHCRAFT, for appellee; E. M. ASHCRAFT, of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

## Abstract of the Decision.

1. CORPORATIONS, § 127*—*what essential to enforcement of subscription to stock.* Where an action is brought upon a stock subscription, where it appears that a corporation has ceased to do business but owes no debts and the amount to be collected on the subscription is to be distributed among the other stockholders to equalize the losses, it is essential before a recovery that the amount of losses be ascertained and determined and that it be shown what amount is due and unpaid from each subscriber and what disposition has been made of the assets of the company before a recovery can be had.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

In re Estate of Dickason, 199 Ill. App. 640.

2.    CORPORATIONS, § 125*—*when notice of assessment on stock subscription essential.* Where a resolution of the stockholders of a corporation provides that if an assessment of over ten per cent. on stock be made, thirty days' notice shall be given, such resolution being in conformity with the terms of the subscription list, the making of such assessment and the giving of notice are prerequisite before a recovery on a subscription.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.